No. 15-1954

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
_____

Ross Development Corporation,
*Third-Party Defendant – Appellant*,

v.

PCS Nitrogen, Inc.,
*Defendant – Third Party Plaintiff – Appellee*,

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
_____

**APPELLEE PCS NITROGEN, INC.'S
REPLY BRIEF IN SUPPORT OF ITS MOTION
TO HOLD THIS APPEAL IN ABEYANCE**
_____

Wm. Howell Morrison
Haynsworth Sinkler Boyd, P.A.
134 Meeting St., 3rd Floor
Charleston, SC 29401
(843) 722-3366
hmorrison@hsblawfirm.com

John B. Williams
Williams Lopatto LLC
1707 L Street, N.W., Suite 550
Washington, D.C. 20006
(202) 296-1611
jbwilliams@williamslopatto.com

Sandra Kaczmarczyk
Alton Associates PLLC
4443 Alton Place N.W.
Washington, D.C. 20016
(202) 344-5339
sandra@altonassoc.com

*Counsel for PCS Nitrogen, Inc.*

Appellee PCS Nitrogen, Inc. ("PCS") files this reply brief in support of its motion to hold this appeal in abeyance to respond to arguments made by Ross Development Corporation ("Ross") in its opposition to PCS's motion. (Entry 21-1.) In its motion, PCS asked this Court to exercise its authority to stay this appeal so that it can efficiently address arguments regarding the scope and validity of the Letter Agreement, which is the basis of PCS's claim against Ross. (Entry 19-1.) The Court has the inherent authority to defer its consideration of an appeal if doing so serves judicial efficiency. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (holding that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). Local Rule 12(d) also expressly authorizes the Court to "place a case in abeyance pending disposition of matters before this Court or other courts which may affect the ultimate resolution of an appeal." Local R. App. P. 12(d). Because two different claims are pending under the Letter Agreement—one before this Court and one in litigation filed in the district court—PCS moved to stay this appeal until the judgments on both contract claims can be presented to this Court in a coordinated manner.

In opposing PCS's motion, Ross disregards the Court's broad authority to manage its docket and insists that a stay would be inappropriate because the claims and parties involved in this appeal are not the same as those involved in the pending district court litigation. (Entry 21-1 at 7-9.) An identity of parties or claims is not required, however. Nor is it the impetus for PCS's motion. A stay of this appeal best serves judicial efficiency because the very same contract language that gave rise to PCS's claim for contractual indemnification, which is before this Court, is also the basis for the claim now pending before the district court. As Ross points out, the relief sought under the two claims is different. (*Id.* at 7-8.) This appeal addresses the district

court's determination that Paragraph VIII of the Letter Agreement requires Ross to indemnify PCS for litigation costs and expenses. In the lower court proceeding, PCS asserts that the same provision requires that it be held harmless from any responsibility for Ross' share of response costs due under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). The terms of the Letter Agreement—which Ross largely disregards in its motion—govern PCS's entitlement to relief under both claims. Because the district court is still considering the full import of that language, PCS has asked that this appeal be held in abeyance until the court rules on PCS's second contract claim. The basis upon which relief is sought in this Court and the district court is the same, and, for that reason, deferring a ruling on this appeal serves judicial efficiency by enabling the Court to consider all arguments related to that contract language at the same time.

      The Court has the authority to defer consideration of an appeal to advance judicial efficiency. *Landis*, 299 U.S. at 254. *Tate Access Force, Inc. v. Interface Architectural Res., Inc.*, 35 Fed. Appx. 884, 2002 WL 1133475 (Fed. Cir. Apr. 24, 2002), which is relied on by Ross, (Entry 21-1 at 10-11), does not establish a contrary rule. *Tate* involved certification of an interlocutory appeal under 28 U.S.C. §1292(c)(2). Section 1292(c) authorizes the immediate appeal of a judgment entered in a patent infringement action when the judgment is final "except for an accounting." *Tate*, 2002 WL 113475, *1. As a result of the Section 1292(c) certification in *Tate*, the district court's liability determination was appealed while it proceeded with an accounting. The United States Court of Appeals for the Federal Circuit declined to stay the appeal pending resolution of the accounting because doing so would have undermined the rights granted by 28 U.S.C. §1292(c). The court's concern was with preservation of the statutory right, and it declined to stay the appeal because doing so would "render almost meaningless [the] right

2

to appeal a case that is final except for an accounting." *Id.* Section 1292(c) is not at issue here. *Tate* is inapposite and does not provide a basis for denying PCS's motion.

Ross next argues that PCS seeks to defer this appeal for some nefarious purpose, (Entry 21-1 at 22-25), but the suggestion has no basis. Given that the effect of the Letter Agreement is still being litigated, it makes sense that this Court would have the benefit of the district court's complete interpretation of the agreement before proceeding with this appeal. It also seems evident that Ross would benefit from some degree of coordination in the appeal of two contract claims arising from the very same contract provision. Ross insists it has no interest in the Letter Agreement claim pending in the district court because the purpose of the claim is to shift liability for Ross' unpaid share of response costs to entities other than Ross. (Entry 21-1 at 9.) But Ross' assertion is overly simplistic. It is highly unlikely that arguments relevant to PCS's pending contract claim can be neatly separated from arguments relevant to this appeal and PCS's indemnification claim given that they both arise from not only from the very same contract but from the very same contract language. Arguments directed to the meaning of that language and the validity of the agreement implicate both claims.

The idea that PCS seeks to delay this appeal to obtain a strategic advantage in its CERCLA litigation disregards the practical realities surrounding this litigation. (Entry 21-1 at 12-15, 22-25.) As is relevant here, PCS and Ross have been parties to four of the same lawsuits:

- PCS and Ross both were found liable for a share of response costs in the litigation brought by Ashley II of Charleston, LLC ("Ashley") under CERCLA. *Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.*, 791 F.Supp. 2d 431 (D.S.C. 2011), *aff'd*, 714 F.3d 161 (4th Cir. 2013) (hereinafter "Ashley litigation"). In that action, PCS sought indemnification for litigation costs and expenses under the Letter Agreement and a determination that the agreement shielded it from liability for any unpaid part of Ross' share of response costs. The indemnification claim is the subject of this appeal, and the district court found PCS's claim for further relief under the agreement not ripe. (Entry 91-1 at 2-3.)

3

- PCS and Ross both sought coverage under Ross' insurance policies for expenses related to the Columbia Nitrogen Superfund Site ("Site") litigation. PCS sought coverage for Ross' response costs, and Ross sought coverage for its defense costs. Both claims were denied on summary judgment, and that decision was affirmed by this Court on appeal. *Ross Development Corp. v. Fireman's Fund Ins. Co., et al.*, 809 F.Supp. 2d 449 (D.S.C. 2011), *aff'd*, 526 Fed. Appx. 299 (4th Cir. 2013).

- PCS sued Ross' former shareholders and directors to recover funds to pay Ross' share of response costs. *PCS Nitrogen, Inc. v. Ross Development Corp., et al.*, 2015 WL 5122878, Case No. 2:09-cv-03171-MBS (D.S.C. Aug. 21, 2015) (hereinafter "shareholder litigation"). The shareholders were found liable for fraudulent conveyance under South Carolina's Statute of Elizabeth. A jury found the directors liable for breach of duty, but the district court subsequently granted the defendants judgment notwithstanding the verdict on that claim. PCS has asked the court to reconsider that decision.

- Once PCS incurred costs remediating the Site, PCS brought a CERCLA action to recover its costs against Ross and other parties found liable for response costs in the Ashley litigation. *PCS Nitrogen, Inc. v. Ross Development Corp., et al.*, Case No. 2:14-cv-04252-MBS (D.S.C.) (hereinafter "PCS litigation"). PCS's second claim under Paragraph VIII of the Letter Agreement is pending in that suit. Ross attempts to dismiss PCS's claim under the agreement as "incidental," (Entry 21-1 at 7), but in fact, whether the agreement shields PCS from the unpaid portion of Ross' response costs is significant given that Ross bears the largest share of costs—a 45% share—and asserts it is unable to pay any costs at all.

A large part of the litigation involving PCS and Ross has been directed to the recovery of funds to pay Ross' share of response costs. Without litigation against Ross' insurers, shareholders, and directors, Ross' entire 45% share of liability would be an orphan share.

In suggesting that a stay of this appeal would somehow give PCS an advantage in its CERCLA litigation, Ross disregards this reality. To date, the only funds that have been recovered to pay Ross' liability under CERCLA and the Letter Agreement are the funds due to PCS under the fraudulent conveyance judgment entered against the former Ross shareholders. (Entry 19-3 at 22.) Whether PCS's indemnification rights are resolved on appeal now or later has no practical significance unless the shareholders abide by the district court's judgment and deposit the $4.5 million that was fraudulently distributed to them into a trust. Without those

4

funds, PCS will have no ability to collect the fees and costs due to it under the district court's indemnification judgment. If this Court affirmed the district court tomorrow, PCS could not collect on the indemnification judgment or any CERCLA judgment without the trust. Thus, the practical reality facing PCS is that the judgment in the shareholders suit drives the timing of the ultimate disposition of all Site-related litigation between PCS and Ross because it controls PCS's collection of monetary relief. In light of these circumstances, the granting of PCS's motion to hold this appeal in abeyance will have no impact on when the litigation between PCS and Ross is ultimately concluded.

Ross' further suggestion that it would be prejudiced if PCS prioritized collection of any CERCLA judgment entered against Ross in the PCS litigation over collection of the indemnification judgment, (Entry 21-1 at 14), makes no sense. The fact of the matter is that there are limited funds available to pay all of Ross' liabilities. As PCS explained in its motion for summary judgment in the PCS litigation, the available funds will not be sufficient to pay Ross' share of response costs. (Entry 19-3 at 22.) If PCS later decides to collect a monetary judgment entered under CERCLA from those limited funds, that decision would not prejudice Ross in any way. To the contrary, it would ensure Ross is able to pay as much of its share of response costs as possible—which benefits all parties found liable for costs at the Site who would otherwise have to bear the portion of costs that Ross leaves unpaid. Collection of the indemnification judgment, by contrast, benefits only PCS and reduces Ross' ability to pay its full share of costs. Ross, in other words, has completely misconstrued the litigants' interests in enforcement of the judgment. The entities liable for response costs at the Site broadly benefit if PCS prioritizes collection of Ross' share of CERCLA response costs.

5

Finally, Ross errs when it suggests that the district court will not need to consider the Letter Agreement further if this Court accepts Ross' argument that agreement did not survive closing on the sale of the Site. (Entry 21-1 at 9.) Ross' argument overlooks the full scope of the arguments that PCS has made in connection with the Letter Agreement in the district court. PCS's request for relief is not limited to a request made under the Letter Agreement as a matter of contract law. PCS also has argued that the terms of the Letter Agreement must be taken into account as an equitable matter under CERCLA Section 113. (Entry 19-3 at 24-26.) Whether or not this Court affirms the district court's indemnification judgment, the district court will have to consider that equitable argument. Resolution of this appeal, therefore, would not eliminate the need for the district court to revisit the significance of the Letter Agreement.

As a dissolved corporation, the last thing Ross should be encouraging is immediate prosecution of an appeal that could be significantly affected by pending litigation or become unnecessary in light of the limited assets available to pay Ross' liabilities. The Court and parties would be best served by focusing available resources on resolving other related litigation pending in the district court and returning to this appeal after judgment is entered in PCS's CERCLA litigation.

## **CONCLUSION**

For the reasons set forth above, PCS respectfully requests that the Court grant its motion to hold this appeal in abeyance.

Dated: December 21, 2015.

Respectfully submitted,

s/ Wm. Howell Morrison
Wm. Howell Morrison (No. 3586)
Haynsworth Sinkler Boyd, P.A.
134 Meeting St., 3rd Floor
Charleston, SC 29401
(843) 722-3366
hmorrison@hsblawfirm.com

And
Of Counsel

John B. Williams
Williams Lopatto LLC
1707 L Street, N.W., Suite 550
Washington, D.C. 20006
(202) 296-1611
jbwilliams@williamslopatto.com

Sandra Kaczmarczyk
Alton Associates PLLC
4443 Alton Place N.W.
Washington, D.C. 20016
(202) 344-5339
sandra@altonassoc.com

ATTORNEYS FOR PCS NITROGEN, INC.

7